**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| SHARI MACHESNEY, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) No. 10 CV 10085 ) |
| v. | ) Hon. Sean F. Cox ) |
| LAR-BEV OF HOWELL, INC., et al., | ) ) |
| Defendants. | ) |

**PLAINTIFF'S SUPPLEMENTAL SUBMISSION
<u>IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT</u>**

On March 6, 2017, Plaintiff filed an Agreed Motion for Preliminary Approval of Class Action Settlement. (Doc. 139). The settlement provides full statutory damages to every person who identifies himself/herself/itself as a member of the class by submitting a claim form stating that one or more of the person's fax numbers was involved in the litigation on the dates at issue. In short, the settlement is the equivalent of a complete victory for the class—the equivalent monetary value of a judgment following summary judgment or a jury trial (and affirmed on appeal) and collected from two insurers who reserved coverage and policy limits defenses. Class members must submit a one-page form confirming their membership in the class to receive payment. Like others, this class action involves claims about advertisements sent by facsimile to targets selected from an infoUSA database a business known as "Business to Business Solutions" purchased from infoUSA several years before the faxing ("B2B cases").

On May 5, 2017, following a hearing, the Court entered an order directing Plaintiff to file a supplemental submission. (Doc. 141). This submission follows.

The Court requested responses on three issues: (1) the number of B2B cases Plaintiff's counsel have filed in federal court;[1] (2) the claims rate in B2B cases Plaintiff's counsel have settled in this district; and (3) identifying any cases wherein a district court reviewing a proposed settlement in a B2B case has performed a lodestar cross-check before awarding attorney's fees to Plaintiff's counsel equal to one-third of the total settlement fund.

## I.   NUMBER OF B2B CASES

Plaintiff's counsel has reviewed its records and determined involvement in 71 B2B cases filed in or removed to federal court. Thirteen of those, including this one, remain open.

## II.   CLAIMS RATES IN EASTERN DISTRICT OF MICHIGAN B2B CASES.

The firms of Anderson + Wanca and Bock, Hatch, Lewis & Oppenheim, LLC have had three B2B cases settle in this District: (1) *Imhoff Investment, L.L.C. v. Sammichaels, Inc.*, Case No. 10-cv-10085 (Final Approval Order Jan. 18, 2017) (Doc. 124) (Battani, J.); (2) *Jackson's Five Star Catering, Inc. v. Beason*; Case No. 10-cv-10010 (Final Approval Order Apr. 15, 2015) (Doc. 90) (Tarnow, J.); and (3) *Avio, Inc. v. Creative Office Solutions, Inc.*, Case No. 10-cv-10622 (Final Approval Order Dec. 10, 2012) (Doc. 31) (Roberts, J.). In *Imhoff*, 147 claims were submitted out of 7,019 class members (2%). In *Jackson's*, 193 claims were submitted out of 3,159 class members (6%). In *Avio*, 431 claims were submitted out of 3,258 class members (13%).

These rates of people submitting claim forms for recovery in a class action are consistent with historical norms. As the Sixth Circuit recently held:

> Blackman's assumption that class counsel "structured the settlement to withhold benefit from 92% of the class," (Blackman Br. at 19), moreover, is not supported by any evidence of an unduly burdensome component of the claims process. Here, there is every indication that Dahl diligently attempted to reach each class member: multiple forms of notice were provided, including ads in 13 different newspapers,

---

[1] Plaintiff interprets the Court's request as including not just cases filed in federal court but also those cases that were filed initially in state court and removed to federal court.

a website, and a dual email and postcard mailing approach targeting individual class members. The actual claim form was also short and straightforward.

Class counsel has provided a substantial number of citations to cases employing claims processes similar to this one, including in similar health club settlements. The objectors have provided no authority indicating that the claims process here was improper. Furthermore, Dahl's testimony that response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent, indicates that the 8 percent response rate was well within the acceptable range for a consumer class action. Given this response, the obvious uncertainty about any class member's address, and Dahl's testimony about the robustness of the process, we conclude that the district court acted within its discretion when finding the claims process employed here to be appropriate.

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016), *cert. denied sub nom.*

*Blackman v. Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017), and *cert. denied sub nom. Zik v.*

*Gascho*, 137 S. Ct. 1065, 197 L. Ed. 2d 176 (2017). Here, the submission of an easy claim form

that yields a substantial payment of hundreds of dollars and does not require submitting receipts

or certifying things that happened in the past should yield a high claims rate, but the ultimate

decision is in the hands of the class members.

## III.   LODESTAR CROSS-CHECK IN B2B SETTLEMENTS.

Plaintiff's counsel have been involved in 16 class settlements of B2B cases in federal court.

In each of them, the court awarded fees as a percentage of the total settlement fund made available.[2]

The percentage of the fund method in a common fund settlement is appropriate as it "enhances

efficiency" and "it better approximates the workings of the marketplace." *In re Thirteen Appeals*

*Arising Out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F. 295, 307 (1st Cir. 1995). "[T]he

Sixth Circuit has observed a 'trend towards adoption of a percentage of the fund method in

[common fund] cases.'" *Stanley v. U.S. Steel Co.*, 2009 WL 4646647 at *1 (E.D. Mich. Dec. 8,

---

[2] One additional class settlement was for a small sum of money based on Defendant's ability to pay. In that settlement, Counsel only sought and was awarded its expenses, no fees.

2009), *quoting Rawlings*, 9 F.3d at 515; *In re Sulzer Orthopedics, Inc*., 398 F.3d 778, 780 (6th Cir. 2005).

"Particularly, where counsel's efforts create a substantial common fund for the benefit of the class, they are entitled to payment from the fund based on a percentage of that fund." *Id*. "This 'allows a Court to prevent ... inequity by assessing attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.'" *Id., quoting Boeing*, 444 U.S. at 478. "Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement." *Id., citing In re Activision Sec. Litig*., 723 F. Supp. 1373 (N.D.Cal.1989); MANUAL FOR COMPLEX LITIGATION, FOURTH § 14.121 (2004).

In none of the cases did the court request counsel's time and expenses to perform a lodestar cross-check of the percentage fee award of funds made available to class members. However, in *American Copper & Brass v. Lake City Industrial Prods., Inc.*, Case No. 09-cv-1162 (W.D. Mich.) (Final Approval Order Mar. 1, 2016) (Doc. 278) (Quist, J.), the court noted that "class counsel has not indicated the value of their services on an hourly basis. However, pursuant to a prior order, counsel filed a supplemental submission regarding the number of hours expended for the class's benefit. According to that filing, as of December 9, 2013, counsel had spent approximately 600 hours in the instant case and in the declaratory judgment- insurance coverage case. At rates ranging from $75 to $615, Plaintiffs said that the lodestar amount was $326,250." The Court was referring to a postjudgment fee request submitted two and a half years earlier.

None of the Eastern District of Michigan settlements of B2B cases involved a cross-check. The Sixth Circuit has held that a cross-check is "optional." *Van Horn v. Nationwide Prop. and*

*Cas. Co.*, 436 Fed.Appx. 496, 501 (6th Cir. 2011), *citing Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). *See Gascho*, 822 F.3d at 281-82 (6th Cir. 2016).

Moreover, as the *Lake City* approval order notes, "[t]he one-third fee is based on the total $2,400,000 settlement fund, regardless of whether there remains a balance in the settlement fund not paid to class members." Case No. 09-cv-1162 (Doc. 278), p. 7 n.1. This is the rule established by *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court stated that the right of absentee class members "to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480. "[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump–sum judgment recovered on his behalf." *Id.* at 479. "To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class." *Id.* at 480.

Thus, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also US Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1545 (2013) (discussing *Boeing* rule and describing it as one "designed to prevent freeloading"). "This Court has 'recognized consistently' that someone 'who recovers a common fund for the benefit of persons other than himself' is due 'a reasonable attorney's fee from the fund as whole.'" *McCutchen*, 133 S.Ct. at 1550, *quoting Boeing*, 444 U.S. at 478.

The Sixth Circuit has adopted the Supreme Court's reasoning. *See Gascho*, 822 F.3d at 285-86. As the Sixth Circuit held:

> No matter how the *Boeing* fund was structured, the Supreme Court found value in the work of class counsel that provided a fund from which class members could access their claims. Further, though it went unacknowledged by the Seventh Circuit, there was a claims process in *Boeing* ("members of the class can obtain

their share of the recovery simply by proving their individual claims against the judgment fund"), and there was a possibility that unclaimed funds would revert back to the defendant (acknowledging Boeing's "latent claim against unclaimed money in the judgment fund"). *Boeing's* factual features are not significantly different from the settlement terms in this case as they involve a straightforward claims process and a provision that unclaimed funds will remain with the defendant.

*Id. See also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Poertner v. Gillette Co.*, 618 Fed.Appx. 624, 626 (11th Cir. 2015) (same); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (same); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) (same); *see also* 4 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 14:6, p. 570 (4th ed. 2002).

The key inquiry is whether the claims process is straightforward:

A needlessly burdensome claims process was one problem with the settlement in *Pampers*, which provided class members a refund for one box of diapers, but only if the claimant had a receipt and a UPC code—including for diapers purchased up to eight years before the settlement. Given the low value of individual awards in most consumer class actions, a sworn statement attesting to the purchase may often be sufficient documentation. We also find troubling claim forms and websites that appear designed to confuse class members, either by omitting information on the claims process or by presenting this information in a confusing way. A claims process that includes these features may well be inappropriate for approval. But as we discuss in greater detail below, that is not the claims process here, which was transparent and not burdensome.

822 F.3d at 287-88 (internal citation omitted).

Here, as in *Boeing* and *Gascho*, the parties propose a "straightforward" claims process in which "[t]o claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class." It is not "contrived to discourage claims." The proposed notice and claim form are drafted to make the process as simple, clear, and

straightforward as possible to inform the class members of their rights and options and offer them their full statutory damages—$1,000 for most class members. Here, the claim form does not require "a sworn statement attesting to [receipt of faxes]." *Gascho*, 822 F.3d at 287-88. Rather, it requires only confirmation that the person receiving the notice is the same person that had the phone number to which the faxes were sent a decade ago.

If the Court perceives changes that should be made to those documents to ensure the settlement is fair, reasonable and adequate, then Plaintiff will work with Defendants to reach agreement to make those changes and resubmit the settlement for the Court's approval.

Dated: May 15, 2017

Respectfully submitted,

s/ David M. Oppenheim
One of Plaintiff's attorneys

Phillip A. Bock
Tod A. Lewis
David M. Oppenheim
BOCK, HATCH, LEWIS & OPPENHEIM LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500

Jason J. Thompson
SOMMERS SCHWARTZ, P.C.
2000 Town Center, Suite 900
Southfield, MI 48075
Telephone: 800/783-0989
Email: jthompson@sommerspc.com

## CERTIFICATE OF E-FILING AND SERVICE

I hereby certify that on May 18, 2017, I electronically filed the foregoing *Plaintiff's Supplemental Submission in Support of Preliminary Approval of Class Settlement* using the ECF System, which will send notification of such filing to all counsel of record.

s/ David M. Oppenheim